UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER KING, 982476,

    Petitioner,

v.

    Case No. 19-cv-12128
    HON. BERNARD A. FRIEDMAN

GEORGE STEPHENSON,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

I.    Introduction

Christopher King is confined at the Macomb Correctional Facility in New Haven, Michigan. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. King challenges his conviction for second-degree murder, Mich. Comp. Laws § 750.317, second-degree arson, Mich. Comp. Laws § 750.73(1), and unlawfully driving away an automobile, Mich. Comp. Laws § 750.413. For the following reasons, the Court will deny the petition.

II.    Background

King was convicted following a jury trial in Oakland County Circuit Court. The Court will rely upon the Michigan Court of Appeals' summary of the relevant

facts, which are presumed to be correct on habeas review. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a casual sexual encounter between defendant and the victim. The two met on Craigslist, and corresponded via email and text message until the day of the incident. That evening, defendant took an Uber from his home in Detroit, Michigan to the victim's home in Madison Heights, Michigan. The pair went into the victim's bedroom, and engaged in conversation for a brief period. The victim twice performed oral sex on defendant, and then defendant anally penetrated the victim. Defendant took a shower in the victim's bathroom, then returned to the bedroom to get dressed. While in the bedroom, defendant testified that he felt "someone" behind him aggressively grab his left wrist. In self-defense, defendant turned around and put the victim in a carotid "sleeper" chokehold until he stopped moving. After a short time, defendant rolled the victim away from him, and was unable to find a pulse.
>
> Defendant testified that he finished putting his clothes on, grabbed a pair of scissors from underneath the victim's bed, walked down the stairs, and found a white plastic bag. Over the next few moments, defendant placed the scissors, a used condom, the towel he used when he got out of the shower, a soiled blanket, and the top sheet from the victim's bed into the plastic bag. Defendant then returned upstairs, made sure no one else was in the various rooms, placed two wine bottles on the ground, and removed the fitted sheet, which was still on the bed, and placed it around the victim, trailing the end of the sheet into the hallway. Defendant placed the victim's dog in the backyard, and then returned to the kitchen where he unrolled some paper towel and lit it on fire. Defendant also ignited the fitted sheet that was around the victim.
>
> After seeing the house on fire, defendant used the victim's garage keys to open the garage and leave in the victim's car. Defendant drove to a nearby McDonald's restaurant so that he could eat, throw away the plastic bag, and use the Wi–Fi to order an Uber ride back to his Detroit home. The Uber arrived and defendant went home.

*People v. King*, No. 337186, 2018 WL 1308315, at * 1 (Mich. Ct. App. Mar. 13, 2018).

The Michigan Court of Appeals affirmed King's conviction on direct appeal. *Id.* The Michigan Supreme Court denied his application for leave to appeal. *People v. King*, 502 Mich. 941 (2018). King then filed a post-conviction motion for relief from judgment, which the state circuit court denied. (ECF Nos. 14-10, 14-13). Both the Michigan Court of Appeals and the Michigan Supreme Court denied leave to appeal. *People v. King*, No. 350373 (Mich. Ct. App. Dec. 9, 2019) *lv. den.* 506 Mich. 940 (2020).

King now seeks habeas relief on the following grounds: (1) he was denied his state and federal constitutional due process rights because his conviction for second-degree murder was not supported by sufficient evidence to establish guilt beyond a reasonable doubt; and (2) he received the ineffective assistance of trial counsel, resulting in cumulative deficiencies that prejudiced King's defense.

II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

3

>established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (cleaned up). Habeas petitioners should be denied relief so long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton,* 578 U.S. 113, 118 (2016).

4

III. Analysis

    *A.    Sufficiency of the Evidence*

King claims that there was insufficient evidence to support his second-degree murder conviction because the prosecution failed to disprove (1) his self-defense claim or (2) that King had acted under adequate provocation to reduce the charge to voluntary manslaughter.

    1.    Self-Defense

Under Michigan law, "the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v. Heflin*, 434 Mich. 482, 502 (1990); *see also* Mich. Comp. Laws § 780.972(1)(a).

King's contention that the prosecution failed to disprove that he acted in self-defense is not cognizable on habeas review. In Michigan, self-defense is an affirmative defense. *People v. Dupree,* 486 Mich. 693, 704, 712 (2010). "An affirmative defense, like self-defense, admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime." *People v. Reese*, 491 Mich. 127, 155, n. 76 (2012) (quotation omitted). Although Michigan prosecutors are required to disprove a self-defense claim, *see People v. Watts*, 61 Mich. App. 309, 311 (1975), "[p]roof of the nonexistence of all affirmative defenses

5

has never been constitutionally required." *Smith v. United States,* 568 U.S. 106, 110 (2013) (quotation omitted).

Both the United States Supreme Court and the Sixth Circuit Court of Appeals reject the notion that the federal Constitution requires prosecutors to disprove self-defense beyond a reasonable doubt. *See Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F. 2d 1194, 1197 (6th Cir.1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law). "[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F. 3d 731, 740 (6th Cir. 1999) *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).

The Michigan Court of Appeals reasonably concluded that the prosecution met this burden against King. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry when reviewing the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Habeas relief is only appropriate where the state court decision applied the *Jackson* standard in an objectively unreasonable manner. *Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "[T]he only question under *Jackson* is whether" the state court conviction is "so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

The Michigan Court of Appeals rejected King's sufficiency of evidence claim as follows:

> Applying the factors enumerated in [*People v.*] *Guajardo* [300 Mich. App. 26 (2013)] to the facts of this case, we are not persuaded that defendant's use of deadly force was justifiable under these circumstances. We find compelling that there was no prior relationship between defendant and the victim, and therefore nothing to suggest their prior history would have placed defendant on notice that his life may be in danger. Defendant testified that the victim initiated the conflict; however, our review of the record indicated that the victim merely grabbed defendant's hand. We cannot conclude that grabbing someone's hand, particularly after a romantic encounter, is a significant degree of force to warrant defendant's use of deadly forced in defense of himself. Further, defendant failed to mention anything about the victim's alleged use of force during his police interview. According to defendant, the only injury he received was a single "scratch" on his arm,

7

which occurred only after the victim was struggling during the chokehold. Although defendant contends that he was defending himself because he was in fear for his life, we do not find this assertion compelling. We also note that although defendant's physical size is not contained within the record, the jury had the benefit of seeing defendant at trial, and the Michigan Department of Corrections lists defendant as being 6'1" and 145 pounds. At the time of the incident, defendant was 19–years–old and worked as a lifeguard and swim teacher. In comparison, the victim was 5'6" only weighed approximately 130 pounds, and was 59 years old.

Based on the foregoing, we conclude that a reasonable jury could have concluded that even if the victim had initiated the physical conflict and excessive force by defendant would have been justified, defendant's continual choking of [the victim] beyond consciousness is excessive and was "unnecessary" to prevent his imminent death or great bodily harm. At trial, an expert testified that the victim's unconsciousness likely occurred within 7 to 20 seconds of defendant's application of the chokehold, and that death likely occurred somewhere between two and five minutes. Therefore, at a minimum, defendant continued choking the victim for 100 seconds beyond the point where the victim could have posed any imminent threat.

Additionally, a reasonable jury could conclude that because defendant set the house on fire and drove the victim's car away from the scene after the victim was deceased, he was aware that he was not acting in self-defense, and instead, had committed a crime and was attempting to conceal it. Therefore, looking at the evidence in the light most favorable to the prosecution, a reasonable fact-finder could not have concluded that defendant was acting in self-defense.

*People v. King*, 2018 WL 1308315, at * 2–3 (citations omitted).

In view of the foregoing, the Michigan Court of Appeals reasonably rejected King's theory that the prosecution's failure to negate the self-defense claim undermined the sufficiency of the evidence supporting his conviction.

2. Adequate Provocation

King next argues that the prosecution failed to prove beyond a reasonable doubt that he did not kill the victim in the heat of passion after adequate provocation.

The elements of second-degree murder in Michigan are (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *People v. Goecke*, 457 Mich. 442 463-64 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.*

Voluntary manslaughter, on the other hand, requires proof that the perpetrator "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v. Mendoza,* 468 Mich. 527, 535 (2003). The burden is not on the defendant to prove adequate provocation by a preponderance of the evidence. *People v. Mette*, 243 Mich. App. 318, 325-26 (2000). Nor is the absence of provocation an element of second-degree murder which the prosecution must establish. *People v. Darden*, 230 Mich. App. 597, 604 (1998). Instead, a rational fact-finder may consider even "a modicum of evidence of provocation" to reduce a second-degree murder charge to voluntary manslaughter. *People v. King*, 98 Mich. App. 146, 152 (1980).

Because the absence of provocation is not an element of second-degree murder, it was unnecessary for the prosecution to prove beyond a reasonable doubt that King was adequately provoked when he killed the victim. What is more, a rational factfinder had sufficient evidence to conclude that King acted with malice during the killing. According to the Michigan Court of Appeals:

> Defendant argues that he was adequately provoked because the victim unexpectedly grabbed his hand, and that scissors that had been sitting on the bathroom counter disappeared. Defendant also contends that he became "edgy" after having sex with the victim because the two had met on Craigslist. Considering the evidence in a light most favorable to the prosecution, defendant's adequate provocation argument is without merit.
>
> The fact that defendant became cognizant of the dangers associated with meeting people from Craigslist does not provide adequate provocation. Defendant admitted that he met up with people from Craigslist for the purpose of sex many times before. In fact, defendant "couldn't even count" how many times he had previously used Craigslist to meet casual sex partners. Based on the record before us, we are unpersuaded that this particular sexual encounter caused greater concern than other past encounters did. Further, although defendant testified that he had observed the missing scissors underneath the victim's bed, he admitted that he had not seen the scissors until after the victim was already on the floor in a chokehold. We also note that defendant made no mention of seeing the scissors underneath the bed during his police interview.
>
> Additionally, even if the victim had grabbed defendant's hand, such a gesture, by itself, does not justify becoming so impassioned that choking the victim past rendering him unconscious was reasonable. Prior to the victim grabbing his hand, defendant's testimony does not suggest that the victim was hostile. In fact, defendant's own testimony revealed the two engaged in conversation prior to sex, the victim was submissive during the act, and the pair cuddled during sex.

> Moreover, the victim was, at the very least, unconscious for 100 seconds before he died. Accordingly, even if defendant had been adequately provoked, a reasonable fact-finding could have determined that defendant would have had, at the very least, 100 seconds to "cool off." Therefore, looking at the evidence most favorable to the prosecution, a rational fact-finder could conclude that defendant was not adequately provoked or that even if provoked, a reasonable cooling off period occurred after the provocation, but before the killing.

*People v. King*, 2018 WL 1308315, at * 3–4 (internal citations omitted).

For all these reasons, the Michigan Court of Appeals reasonably determined that a rational trier of fact had sufficient evidence to find that King acted with malice aforethought – and not in the heat of passion – when he killed the victim.

    B.    *The Ineffective Assistance of Trial Counsel*

Although King asserts that he was denied the effective assistance of trial counsel, the respondent claims that the purported error is procedurally defaulted. According to the respondent, King raised the ineffective assistance argument for the first time in his post-conviction motion and failed to show cause and prejudice for failing to raise it on direct appeal. *See* MCR 6.508(D)(3).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is likewise barred unless the petitioner can demonstrate (1) "cause" for the default and actual prejudice resulting from the alleged constitutional violation, or (2) that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Where the petitioner fails to show cause for the procedural default, it is

11

unnecessary for the court to reach the prejudice question. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

In extraordinary cases where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). Such a claim of innocence requires the petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The Michigan Supreme Court rejected King's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. King*, 506 Mich. at 940. The Michigan Court of Appeals likewise denied post-conviction relief "because the defendant failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 14-16, PageID. 863). These form orders, however, do not reference subsection (D)(3). Nor do they mention King's failure to raise the ineffective assistance claim on direct appeal as the basis for denying post-conviction relief. Because these form orders are unclear as to whether they refer to a procedural default ass opposed to a denial on the merits, the Court must "look to the last

12

reasoned state court opinion to determine the basis for the state court's rejection" of King's claim. *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

Here, the state circuit court denied post-conviction relief on the ineffective assistance claim specifically because King failed to show cause and prejudice under MCR 6.508(D)(3). (ECF No. 14-10, PageID. 622). So the claim is now procedurally defaulted. *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007).

Lastly, since King did not articulate any reason for excusing the procedural default, he "has forfeited the question of cause and prejudice." *Rogers v. Skipper*, 821 F. App'x 500, 503 (6th Cir. 2020). And because King did not proffer any new reliable evidence to support an assertion of actual innocence, he has failed to establish that a miscarriage of justice occurred that would excuse his default. *See Gentry v. Trippett,* 956 F. Supp. 1320, 1327 (E.D. Mich. 1997). King's procedural default, therefore, precludes awarding habeas relief on his ineffective assistance of trial counsel claim.

V.   <u>Certificate of Appealability</u>

Before King may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner

13

demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). When a district court denies habeas relief on procedural grounds without reaching the underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court's procedural ruling is correct. *Id.* at 484.

Applying these standards, King is not entitled to a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dufresne v. Palmer*, 876 F.3d 248, 253-55 (6th Cir. 2017). But the Court will grant him leave to appeal *in forma pauperis* since the issues raised are not frivolous and an appeal could be taken in good faith. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (defining "frivolous"); *Coppedge v. United States*, 369 U.S. 438, 445 (1962) (defining "good faith"). Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus is denied with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that King may proceed *in forma pauperis* on appeal if he chooses to appeal this decision.

SO ORDERED.

Dated: March 27, 2023  
Detroit, Michigan

s/Bernard A. Friedman  
Bernard A. Friedman  
Senior United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on March 27, 2023.

**Christopher King**  #982476  
MACOMB CORRECTIONAL FACILITY  
34625 26 MILE ROAD  
LENOX TWP., MI 48048

s/Johnetta M. Curry-Williams  
Case Manager